## Commonwealth *v.* Campbell, Appellant.

*Criminal law—Assault and battery—Evidence—Indictment—Charge.*

An indictment for assault and battery charged that the prisoner inflicted upon the prosecutrix grevious bodily harm by striking her on the head with a chair. At the trial the prosecutrix testified that among other injuries, the prisoner knocked her down with a chair, thereby causing a lump on her head, which got sore, and was not healed at the time of the trial. *Held,* that it was competent for a physician to testify that the wound might have been caused by a blunt instrument, and that from an examination made within four or five months of the trial he was of the opinion that the injuries might have been inflicted a year before the trial at the time averred in the indictment for the assault.

*Rule of court—Witness—Evidence.*

The court may adopt and apply in a proper case a rule of court to the effect that "the re-examination of a witness shall be only in respect to explanation of any new matter elicited on the cross-examination unless with leave of the court where the matter had been overlooked in chief."

*Appeals—Assignments of error—Waiver of error.*

An assignment of error which embraces more than one point or refers to more than one bill of exceptions violates rule XIV.

*Criminal law—Reasonable doubt—Charge.*

A prisoner in a criminal trial has no ground to complain of a charge as follows: "the presumption is that the defendant is innocent, and the presumption continues up until the moment that you are satisfied by the evidence beyond a reasonable doubt of his guilt. This reasonable doubt is such a doubt that fully arises from the evidence. It should not be a mere whim or surmise. There should be such a doubt as there is a reason for and which fully arises out of the evidence. . . . We would say further that the doubt arises from all of the evidence, and if the doubt arises from a single juryman the other eleven jurymen should come to the mind of that one. It of course takes twelve jurymen to arrive at the verdict."

Argued March 6, 1906. Appeal, No. 113, April T., 1906, by defendant, from judgment of Q. S. Clarion Co., May T., 1905, No. 17, on verdict of guilty in case of Commonwealth v. Andrew Campbell. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Indictment for assault and battery. Before WILSON, P. J.

At the trial Dr. J. M. Fitzgerald was called on behalf of commonwealth and sworn.

Direct examination by Mr. F. J. Maffett. " Q. You are a practicing physician located at Clarion? A. Yes, sir. Q. How long have you practiced? A. About thirty-five years. Q. Are you acquainted with the prosecutrix, Mrs. Campbell? A. I am, slightly. Q. Have you seen her as her doctor? A. Yes, she has called in to see me three or four times. Q. Did you make any examination of her?"

Defendant's counsel request counsel for commonwealth to state what they propose to prove by this witness.

Mr. F. J. Maffett: We propose to prove by this witness that he has examined Mrs. Campbell's head and the condition in which he now finds it, or at the time he made the examination.

Objected to as incompetent, irrelevant and immaterial.

The Court: Objection overruled; exception to defendant, and a bill sealed.

" Q. State whether or not you examined Mrs. Campbell's head? A. I did, and examined her head. I found two or three lumps on the back of her head that I thought was caused by some blunt instrument, that at the time was pretty tender and pretty sore. Q. From your experience as a physician, could those lumps have been made as long as eighteen months ago or a year ago? A. They might have been made quite awhile before. I couldn't state the length of time. Q. What would you say as to whether they might have been made as long as October of last year? A. They might have been caused at that time."

Cross-examination by Mr. George F. Whitmer: " Q. And they might not have been? A. There's nothing positive about that. It might have been more recent than that. Q. And quite considerably more recent? A. Yes, sir. Q. When did you first see her? A. I suppose three or four months ago. Q. Have you any way of fixing the date? A. Nothing positive, it's been within the last five months. Q. Since the last term of court here? A. No, it was before that. Q. How long before? A. I examined her head awhile before that, don't know just how long, can't state. Q. Have you examined her head several times since? A. Probably three or four times. Q. You are a pretty busy man? A. Sometimes we are very busy. Q. Sometimes not so busy? A. No. Q. That might have been caused by falling downstairs? A. It might have

been caused by anything, or being struck by something, as any blunt instrument."

Defendant's counsel requests that this testimony be stricken out, and objects to it as incompetent, irrelevant and immaterial.

The Court: Objection overruled, the request is refused; exception to defendant, and a bill sealed. [1]

Peter McCall was asked this question: " Q. You never measured it?  A. No.  It's nearer fifteen rods each side of the run."

The Court: The witness is excused.

Mr. Whitmer: I propose to ask this witness if a man could see another man strike a woman with a board at that distance.

The Court: The counsel for the defendant had completed his examination of the witness, and we think it is sufficient.

Mr. Whitmer: We had not completed our examination of this witness when counsel for other side interrupted and asked questions, without an opportunity on our part to interrupt; and we ask now if it was possible for a boy to see across from Space's house to the Campbell house and see one person striking another one with a board six to eight inches wide, and five or six feet long.

Counsel for commonwealth object to this as irrelevant.

The Court: The examination of this witness was completed and turned over to the commonwealth for cross-examination. Therefore, the witness is excused.  Exception to defendant, and a bill sealed. [3]

Annie Campbell was asked this question: " Q. She testified here that she never gave your father a cross word, how is that ? "

Counsel for the commonwealth object to the question as irrelevant and immaterial.

The Court: Objection sustained, exception to defendant, and a bill sealed.

" Q. This woman testified that she never gave your father a cross word or threatened him, how was that ? "

Counsel for commonwealth object to the question as irrelevant and immaterial.

The Court: Objection sustained; exception to defendant, and a bill sealed.

" Q. Did you ever hear her threaten your father ? "

12    COMMONWEALTH *v.* CAMPBELL, Appellant.

Statement of Facts—Charge of Court below. [31 Pa. Superior Ct.

Objected to as irrelevant and immaterial, by counsel for commonwealth.

The Court: Objection sustained, exception to defendant, and a bill sealed.

Mr. Whitmer: We propose to ask this witness if this woman had threatened to kill her father in her presence.

Counsel for commonwealth object to this as immaterial.

The Court: Does that justify an assault?

Mr. Whitmer: It does not justify an assault, and it may not be material bearing directly on the assault, but it does bear on the probabilities of her story.

The Court: Objection sustained; exception to defendant, and a bill sealed. [4]

The court charged in part as follows:

The commonwealth, in support of the indictment, called the prosecutrix, Mrs. Campbell, her little daughter by her former husband, Mr. Smith, and also called several of her neighbors there, the two Space boys, James Space and Benton Space. Also, you will remember their testimony in reference to what the commonwealth alleges to be in corroboration of the testimony of the prosecutrix at the time that she testified that the assault and battery was committed upon her by her husband by the striking of the board. Each of these boys, you will recollect, testified in substance that they saw her husband hit her at one time with the board. Also, the commonwealth introduced the evidence of Miss Slaugenhaupt, Mrs. J. E. Bowser and Mrs. Thomas Space. You will recollect their testimony as to the prosecutrix going to their house nearby at different times after the alleged assaults and batteries were committed upon her, and about the marks upon her person that she showed these witnesses, and her account on the stand here of how those marks were inflicted upon her as bruises occasioned by, as what she claims to be, the unlawful beating and assault and battery committed upon her by the defendant. Also, the testimony of Squire Stewart fixing the time of when the information was made before him in October, 1904, of assault and battery, and at the time the complaint was made there was no hearing and that the case was withdrawn or settled. Also, the testimony of O. R. Morgan, who was called in rebuttal after the defend-

ant, you will recollect, testified that his wife was drunk coming home from Sligo, and his two daughters testified in substance that she was drunk when she came home.   You will recollect the testimony of Mr. Morgan in rebuttal, that he talked with the prosecutrix here at that time ; what he heard her say in reference to her husband beating her at that time, and that her appearance didn't indicate to him that she was intoxicated. That was for the purpose of contradiction of the witnesses on behalf of the defendant.   [Also, the testimony of Dr. Fitzgerald as to her physical condition and as to the seriousness of the wounds which were inflicted upon her, what he found at the time he examined her some time after the wounds were received ; tending to show that the injury committed upon her was a serious one.] [2]

The defendant, you will recollect, took the stand and denied specifically each one of the charges, the alleged assault and battery and the shooting.   You will recollect that the prosecutrix testified that she had been shot at three times in the buggy, through the dress, coming home from Sligo, and then at two other times in the house he shot at her.   The defendant denies all of these charges.   He denies specifically in response to the questions by his counsel, each one of these acts that was testified to by the prosecutrix, and his version of it is that instead of making these attacks upon his wife, that when they came home from Parker and from Sligo, and also, I believe, when coming home from Monterey, that she was drunk and so drunk that she didn't know what was going on, and that there was nothing of this kind occurred and that it was all made up. You will recollect the testimony of his two daughters, Miss Annie Campbell and Miss Blanche Campbell, who were living in the house and then with the family, being daughters by his first wife, in which they corroborate their father, and at the time they were there they state that none of these occurrences happened ; that their father did not strike the prosecutrix here, or did not pull her by the hair ; and, in fact, as they claim, that they saw nothing improper or out of the way there, or that none of the crimes alleged in this indictment were committed within their presence or within their knowledge.   Also, the testimony of Mr. Campbell's brother Joseph, in which he states that when she first came there to their home, that he noticed a lump, I

think he said it was on the knuckle of one of the hands ; from which they desire you to infer that the injury she complained of was made to her hand, or thumb, or to her little finger, that she alleges was done by her husband, the defendant, after she was there, was on the knuckle when she first came, and, therefore, that he could not have done it.  Also, the testimony, I believe, of Joseph Campbell in reference to the distance and location ; from which they desire you to infer that these Space boys could not have seen the striking of this woman.  You will recollect the distance he spoke of between the house, and the cross-examination by Mr. Maffett, that the distance was about twenty feet.  Also, the testimony, I think, of Peter McCall as to certain statements.

So that from these witnesses and from the fixing of dates by them, you are to arrive at your verdict.  I don't know that there is much the court can say that would help you, except to say that in considering the credibility of the witnesses and which ones you will believe, you should consider their interest in the result of the case, you should consider their relationship to the respective parties, you should consider their manner of testifying, their candor or their want of candor, and also whether they are corroborated or contradicted by other witnesses.

The defendant, of course, in this case as in any other criminal case, has a right to testify in his own behalf, but still you are the judges of what weight ought to be attached to his testimony, and in considering what weight should be given to it you should take into consideration all the facts and circumstances surrounding the case as disclosed by the evidence, and give his testimony such weight as you believe it to be entitled to in view of all these facts and circumstances.  The burden is on the commonwealth to prove every material allegation in this indictment to your satisfaction beyond a reasonable doubt.  The presumption is that the defendant is innocent, and this presumption continues up until the moment that you are satisfied by the evidence beyond a reasonable doubt of his guilt.  This reasonable doubt is such a doubt that fully arises from the evidence.  It should not be a mere whim or surmise.  There should be such a doubt as there is a reason for and which fully arises out of the evidence.  It is the duty of the commonwealth to call all of the witnesses of an alleged crime.  In this case, the defendant alleges

that the commonwealth did not, but I believe that they claim they did procure two witnesses, the two Miss Campbells, on behalf of the defendant.   This would make against the commonwealth and should be considered in connection with all of the other elements in the case.   The fact that this prosecutrix made a complaint or an information in October, 1904, before Squire Stewart, and the complaint was afterwards withdrawn, or the case settled, and the defendant here paid the costs, under all the evidence in this case and under the plea, would be no bar to a verdict in this case.

[We would say further that the doubt arises from all of the evidence, and if that doubt arises from a single juryman the other eleven jurymen should come to the mind of that one.   It, of course, takes twelve jurymen to arrive at the verdict.]  [5]

Verdict of guilty upon which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were (1, 3, 4) rulings on evidence, quoting the bill of exceptions ;  (2, 5) above instructions, quoting them.

*George F. Whitmer*, for appellant.

*F. J. Maffett*, with him *W. J. Geary*, district attorney, *J. T. Reinsel*, ex-district attorney, and *H. M. Rimer*, for appellee.

OPINION BY RICE, P. J., April 23, 1906 :

The defendant was sentenced upon the third count of the indictment, which charged that he maliciously inflicted upon the prosecutrix grievous bodily harm by striking her on the head with a chair, by choking her, by throwing her down violently and otherwise beating, bruising and abusing her.   Upon the trial of the case, which took place in November, 1905, she testified in support of this charge that on Christmas, 1904, amongst other injuries, he knocked her down with a chair, thereby causing a lump on her head, which, to adopt her language, "swelled up and got sore all the time after that," and that, although it sometimes got better, the wound was not entirely healed at the time of the trial.   In view of this testimony and of the nature of the charge upon which the defendant was being tried, it was perfectly competent, not only to

introduce the testimony of the physician as to what he found to be the condition of her head when he examined her within four or five months before the time of the trial, but also to elicit from him as a medical expert the opinion that the injuries were caused by a blunt instrument, and that they might have been inflicted as long before as December, 1904. This we think needs no discussion. Nor was there any error in calling the jury's attention to this testimony when the judge was summarizing the testimony of the witnesses on the one side and the other in his charge. He had carefully and fully instructed them that the credibility of the witnesses and the weight to be attached to their testimony were exclusively questions for their determination, and what was said regarding the testimony of this particular witness could not have been understood by them as qualifying in any manner these general instructions. His testimony, if believed, tended to corroborate the prosecutrix as to the seriousness of the injuries, and we cannot see that the excerpt from the charge, quoted in the second assignment, ascribed to it any other significance.

In considering the third assignment of error it is important to notice that one of the standing rules of the court below provides, inter alia, that "the re-examination of a witness shall be only in respect to explanation of any new matter elicited on his cross-examination unless with leave of the court where the matter had been overlooked in chief." There can be no question as to the power of the court to adopt such a rule. When administered with proper discretion the rule tends to secure orderly procedure in the examination and cross-examination of witnesses, and does not prevent the re-examination of a witness under circumstances where the justice of the case requires it. Upon consideration of the course pursued in the examination, cross-examination and re-examination of this witness, as shown by the record, we are not convinced that the court erred in enforcing the rule. Moreover, the testimony sought to be introduced by the question quoted in the assignment of error was in reality but the opinion of the witness as to a matter not calling for expert or opinion evidence. It was not alleged that this opinion which it was proposed to have the witness give was based upon an actual experiment made by him. Nor were any special circumstances shown from

which it could be inferred that this witness was better qualified than the jury to form an opinion as to the ability of a person, at the distance described, to see an assault to which a witness for the commonwealth had testified.    Therefore, the court committed no error in excluding the question.

The fourth assignment of error is in plain violation of our rule which provides, that if any assignment embrace more than one point or refer to more than one bill of exceptions, it shall be considered a waiver of all the errors so alleged : Rule XIV. But aside from that objection, the assignment is without merit, because it does not appear from any of the several questions therein quoted that they related to threats, declarations or conduct of the prosecutrix which were connected with the assaults to which she had testified.

That part of the charge relative to reasonable doubt, quoted in the fifth assignment, is to be read in connection with what immediately preceded it relative to the same subject.    Thus considered, the defendant has no just ground for complaint. Indeed, to charge that if one juror has a reasonable doubt, " the other eleven jurymen should come to the mind of that one," was stating the law more favorably to the defendant than he had a right to ask, and much more favorably to him than if the court had affirmed, without qualification or correction, his request for instructions as set forth in the stenographer's report of the trial.

The defendant had a fair trial according to the forms of law, and was convicted upon competent evidence which fully justified the verdict of the jury.

All the assignments are overruled, the judgment is affirmed and the record is remitted to the court below with directions that the sentence be fully carried into effect, and that the defendant undergo the full term of imprisonment which had not expired when this appeal was made a supersedeas.